2011-15-84, BOZEN, Inc. v. PAR PHARMA Mr. Kuchansky, you're going first. Mr. Berman. Mr. Berman. Okay. Thank you, Mr. Clerk. Richard Berman for Aaron Fox. Out of my ten minutes, I'd like to reserve two for rebuttal. Regarding the 499 and 458 patents, the Markman Order itself is not on appeal here. What is on appeal is the misapplication of the Markman Order by the District Court. You have a term, concomitant administration, which includes both simultaneous and sequential administration, possibly over many hours. The Markman Order interpreted it this way after considering the claims as a whole. The District Court held that the prior art showed concomitant administration, but yet ignored its Markman Order construction and said that if the prior art didn't show simultaneous administration, then the claims were not obvious. This is improper as a matter of law, under the Vitamix case particularly. That's the issue with the 499 and 458 patents. On the 183 patents, the issues of infringement are very simple. Pozen flat out failed to prove infringement. That should end the analysis right there. In addition, the District Court improperly applied a legal analysis and let Pozen have equivalence of equivalence, which is improper under the law. So for these reasons, this Court should reverse the finding of validity and the finding of infringement. Could I take your first point just a bit, add a footnote to it? I'm on the same page with you in terms of whether or not the trial judge properly applied the full meaning of concomitant administration when looking at Henry Ford and Katarsi at all. But as I read the District Court decision, he said, in addition, none of those references teach what I'll call efficacious use, because there is an efficacy requirement in the claim. Now, the efficacy, can I call it the efficacy motivation? Yes, that's what we call it. That was not construed in Martin Henry. But one has to think, and you can tell me that the trial judge must have been construing the term in his mind when he reached the decision that these prior references didn't teach the efficacy. Because they didn't show post hoc success with the drug. In this particular instance, the efficacy limitations, you look to the specification as to what the specification says in this particular instance. And the specification is very, very clear on this point, that if you use the commercially available product at the commercially available doses, in other words, the Imitrex product, which was on sale at the time, Sumatriptan, and the Anaprox product, which is naproxen sodium, both on sale at the time, both in use in the prior art references, if you use those commercially available products, these are considered by the patent itself to be effective amounts. I didn't see any exact correlation in the spec in the language the way you're saying it. Certainly all the possible dosages are laid out, and certainly the spec says the ordinary practitioner in the medical healing arts would have to adjust with one or the other. There is an actual quote that I can give you. Help me. In the 499 patent, it's at 530 through 34. 530, remember? I'm sorry. Column 5, lines 30 through 34. It says for 5-H-D-Agnus, which is Imitrex, and NSAIDs, which are naproxen, and particularly as to those already in the marketplace, a therapeutically effective amount shall particularly include that dosage that has been determined as safe and effective for any indication. That's the Sumatrapan, I'm sorry, the Imitrex and the Anaprox products. So the patent itself is guiding us on that. When you made your arguments in district court, did you use the term concomitant or did you say simultaneous? We have consistently used concomitant throughout the entire proceedings. There's no doubt that it's simultaneous. I would try to say that there's a difference. Does your case depend on whether we think concomitant means simultaneous? No, it does not. The issue with the district court, when they misapplied the Markman order and required simultaneous administration, the court stopped its analysis right there. When it found that the prior art did not show simultaneous administration, it stopped its analysis full on. It never considered whether concomitant administration would render the claims obvious. And in this particular instance, even looking at the claims as a whole, the claims are obvious. You have concomitant administration of the same drugs at the same dosages that the patents say are effective, and Pozen doesn't even argue that the remaining limitations aren't obvious. So you have a manifest case of obviousness. So you're telling us that the claims properly interpreted include non-simultaneous administration despite the specification? No, in accordance with the specification. In accordance with the sentence you just pointed out? In accordance with the entire specification. The specification specifically defines concomitant administration as being simultaneous, co-timely, and... Column 8, let's write it as line 1, defines the term concomitant administration as used in the patent. If you look at column 8, look at column 8, line 1. For convenience, concomitant administration shall refer to simultaneous administration, co-timely administration, or coordinated administration. Correct. And that is what the Markman order held. The Markman order just simply... And the parties don't even argue on this point. The parties were in complete agreement that concomitant includes those three definitions. It was only after Pozen was faced with our evidence at trial that they tried to change their tune and tried to restrict or tried to get the court to restrict the interpretation. So even if those claims are appropriately interpreted as fraud, what do you do with the tablet claims where when you have the product in layers, there's no way of administering it other than simultaneous? That's actually untrue, Your Honor. There are plenty of instances, and this is... I'm just talking now in general, in the art. Well, let's talk about this case. Well, there are plenty of instances where you have a tablet that is in a uniform where the agents are administered. One's administered immediately, and the other is delivered. But that's not the 183 patent. In the 183 patent? The 183 patent requires that they must be in the same tablet. The 183 patent is... It requires simultaneous. It is required, yes, that the 458 and 499 are what we're talking about from the invalidity standpoint, and they're the ones that define concomitant. They're the ones that include concomitant in the claims. We are not arguing that under the correct interpretation of the 183 patent that you need concomitant administration. The 183 patent is a non-infringement-based argument based on the correct interpretation of the claims. I see I'm running into my time. Yes, you are. Let's hear from your colleagues. Well, I have a question. Okay. Stand by. Okay. You referenced there are changes at the other side, changing their tune, and it brings me to page 17 of your report, corrective reply brief, in which you reference misguided attacks even more egregiously, and then you end by saying the court should give posings misrepresentations. No way. I want you to be prepared to stand by that when you stand back up, and before you do, I'm going to ask your opposing counsel about even more strenuous statements of fraud on the court alleged against your side, and I think this kind of language is unacceptable. You better be prepared to support it. Thank you.  Mr. Byrne, Mr. Kuchansky. Thank you, Donna. Paul Kuchansky for Appellate, Dr. Reddy's Laboratories. What I'm going to direct the attention to here is the 183 patent and the question of proof put forward at trial, and the absence of proof indeed put forward with respect to whether it be par with respect to Dr. Reddy's concerning infringement of Claim 2. But it appeared to be a trial that the district court, and also oppose and argue, if it works, if you get independent dissolution, it must infringe, and nothing further is necessary. However, Claim 1 of the 183 patent is very specific. It requires two very specific elements, specific tablet architecture and independent dissolution. Now let me direct my attention first to independent dissolution. Independent dissolution is defined in the 183 patent and was also that a construction was agreed to by and between the plaintiffs and the defendants as to what it means. Independent dissolution means that the naproxen and the tryptin of a multilayered tablet occurs approximately at the same rate, which was defined as within plus or minus 10% of the dissolution of the same amount of naproxen in a naproxen tablet alone and tryptin in a tryptin tablet alone. In this case, that evidence was never shown. That evidence was never presented. What we get and what we get in the briefs is that, especially with Dr. Reddy's, where it says they characterize the Dr. Reddy's product as dissolving quickly, as dissolving rapidly. You said in your brief, you said in your brief, no proof underlying. I'm going to ask about that, so don't waste time. Okay. Let's talk about the proof. What evidence was there? The first thing that was presented for Dr. Reddy's was ANDA dissolution data. That ANDA dissolution data related to a multilayered Dr. Reddy's tablet. What isn't in there and what wasn't provided was the comparison. They say that data shows it was quick. That data shows it was fast. The problem is, is that fast or quick as compared to what? It's easy to say those words. The patent defines. The patent is very clear and Judge Love, during the claim construction, was very clear to prove independent dissolution, you had to compare the multilayered tablet to the individual elements alone. That's one aspect of lack of proof. The second is that they then say, well, let's take that ANDA dissolution data and let's compare it to Table 7 in the patent. Well, let's look at Table 7 for a second. Table 7, first of all, we do not know whether the product described in Table 7 and the dissolution profile set forth in Table 7 fit the definition of independent dissolution, the plus or minus definition. So that's one problem with that comparison. Secondly, the Table 7 relates to a totally different product, a totally different formulation, different excipients, different processes. The products aren't the same. It was an apples to oranges comparison. Can I ask a question? Yes, sure. About the 499 and bi-radiated patents, and obviously you haven't addressed that at all. No, we have not. And my question is, are the claims limited to simultaneous administration? Sure. Agreed. For Dr. Reddy's position. I'm not Dr. Reddy. I'm talking about the purposes of analyzing the prior art that was put in front of the judge, supposedly as a ground for making the claims obvious. I need to know, are you arguing that simultaneous administration is all the patent is concerned with? No, I think the patent is concerned with, as Mr. Berman has said before, is concomitant. Yes, sir. And so doesn't that suggest to you that when the district court said I'm going to ignore certain pieces of prior art because they don't teach simultaneous administration, that that was a mistake? Let me point that out with respect to the Tadnonee reference, which we argue in our brief. If the district court said I'm not going to look at a reference because it doesn't teach simultaneous administration, that would have been a mistake. Yes, I agree with that. That is correct, Your Honor. It's for us to decide whether that's what he did. That is correct, Your Honor. Pretty clear from his opinion that he did. That's exactly what he said, especially with respect to the He said I'm not going to look at it because it's not simultaneous. It's not simultaneous. In our brief, we argue, we talk about the Tadnonee reference, and we believe the Tadnonee reference is a very important reference to invalidate the 458 and 499 patent. But what the judge said is that although, admittedly, it was sequential, there was sequential administration, there was not simultaneous administration. Okay, thank you, Mr. Kachansky. Thank you, Your Honor. We will save this rebuttal time, you said. Mr. Hash. Good morning, Your Honor. Mr. Bork. The district court basis is holding that the asserted claims of the 458 and 499 patents were non-obvious and, therefore, valid on five separate factual findings, each of which is independently sufficient to establish non-obvious. Mr. Hash, let me take you right over so you can jump right on what we just discussed. DRL says, again, I read it, provided no proof, and they underline no proof, and then it was discussed. Can Pozen point to any proof that DRL's NDA product fills the independent dissolution? Yes, Your Honor, we can. The basis for is their own testing of the dissolution of their NDA product, which is at RP56, Pozen's red brief 56358, that's supported by appendix A158111, A158187 through 188, A126344 through A126347. This data was assessed by our expert, and our expert was able to conclude from that data, based upon his expertise in the field, that the sumatriptan was dissolving independently of the naproxen, and the naproxen was dissolving independently of the sumatriptan, and, therefore, the product achieved independent dissolution. He testified to that to the district court, and the district court found the testimony to be credible. When DRL's own expert was asked whether or not the DRL product had independent dissolution, he said he didn't know. So, faced with those two competing levels of evidence, we have an expert who's assessed the comparison of the product and testified that it, in fact, does have independent dissolution, those tables, and then compared that to the data that was presented in the patent to reach the conclusion that the material did have independent dissolution, they were able to present no evidence to rebut that. I think you're going to get a rebuttal argument on that, and I won't be able to hear it. All right, we'll see. Okay, please continue where you were. So, there are five separate independent factual bases. First, it is a fact that the prior art failed to teach simultaneous administration of sumatriptan and naproxen. Are the claims limited to simultaneous administration? You're talking about the 499-480. There's no way that those claims can be read to be anything other than simultaneous administration. There's simply no way to administer a uniform claim interpreted as a marginal. Concomitant administration was interpreted to be, in the context of the 499 patent, to be simultaneous, coordinated, or co-timely. But the district court, Mr. Berman was incorrect, the district court never found that the prior art failed to teach the claim to mention because it doesn't teach concomitant administration, and we never argued that. What we argued is that when you read the claim as a whole, there is no means to administer two drugs in a unit dosage form other than simultaneously. How do you give two active ingredients, a pharmaceutical composition with two active ingredients, in a unit dosage form? I'm not going to give you all the first one. It's in your body. The second one goes in there at the same time. That's what the concomitant administration was talking about. But, Your Honor, you have to read the claim as a whole, and while concomitant administration is broader, it's limited by the other words in the claim, and the other words in the claim... But that wasn't the claim construction. Well, the claim construction of concomitant administration, but when that construction is applied... Well, don't you have to have the same, for claim construction purposes, you have to have the same test used for testing the prior art. Sure. But the district court never found that the prior failed to teach concomitant administration. It actually did not teach concomitant administration of the two active ingredients, but the district court didn't base its opinion. He didn't address whether it taught concomitant. But he didn't say it doesn't teach simultaneous, and therefore I don't need to look at it. So it could well teach concomitant, because concomitant includes simultaneous plus something else. Right. But when you read the claims as a whole, again, there's no way that this claim can be read, any of the asserted claims can be read, to mean any other thing other than simultaneous administration. The two active ingredients, the simitritin and the naproxen, are required to be in a unit dosage form. They're required to be in a single pill. There's no requirement. It can be in a single dosage form. No, Your Honor. If you read the claims, all of the asserted claims require that the two active ingredients be in unit dosage form. If you'd like, I can read an exemplary claim for you. If you read claim three, a pharmaceutical composition, the 458 patent, column 12. So the claim is directed to a pharmaceutical composition in unit dosage form. You said 491? 458, column 12, claim three. I'm sorry. A pharmaceutical... Oh, sorry. That's the 458. I'm talking about the other, talking about the 499. Well, the claims are similar in scope. So, I mean, I can talk about the 491 if you'd rather, but I'm going to... Yeah, so show me a claim on the 491. It doesn't matter. If, in fact, the issue point was corrected by the 458, then it doesn't matter if the other one is 458. 491 can be in that one. But they both require unit dosage form. So, claim three of the 458 patent, a pharmaceutical composition in unit dosage form, useful in treating a migraine headache, which comprises, the unit dosage form comprises a 5-H diagonist, which is Sumatropan, and a long-acting nonsteroidal anti-inflammatory drug, which is naproxen. So you have a pharmaceutical composition with two active ingredients that's further clarified to be in unit dosage form. There's simply no way to give a pill with two components in any manner other than simultaneously. And that's why the court correctly found that the prior art fails to teach the simultaneous administration of these two products. It is nowhere in the prior art. In fact, the prior art teaches away from giving Sumatropan and naproxen together. Sumatropan was touted throughout the art as a monotherapy. That was the universal acceptance was that this drug was a monotherapy. When Sumatropan was developed, it changed the migraine field. It was like the development of penicillin to these patients who, for decades, had suffered from this horrible disease. And this was the first drug that actually treated the condition. And so persons of ordinary skill were not looking to combine this with other drugs. What you see... The claim construction was wrong. No, Your Honor. I assume administration is simultaneous. Well, claim terms have to be construed consistently throughout the claims. You construe the claim in the context of the entire patent. And in the context of all the claims. And there are claims in the 499 patent that don't require that the two active ingredients be in unidosage form. But all of the assertive claims do require that the two things be together, that they be combined in a unidosage form. Which of the 499 claims don't require unidosage? None of the assertive claims do not require... There are claims in the 499 patent that don't involve... that wouldn't require simultaneous... Claim 1, for instance. But are all of the products that are the subject of these answers all in one tablet? Yes, Your Honor. All of... Trexamet, which is the commercial product developed by Pozen, is a single pill. And all of the generic copies of that drug are a single pill, as required by the FDA. So, again... So, the non-competitive administration has one meaning in Claim 1 and a different meaning in Claim 5. Well, because of the words that are around it... Correct. That's the answer. It has a different meaning. No. The claim term is just modified by the other words. Again... You told me that Claim 1 doesn't require simultaneous administration. Claim 1 would not... Claim 1 would not necessarily require simultaneous administration. Claim 5 does. Well, the claims that are limited to... I'm talking about for infringement purposes. For infringement purposes, the claims that are limited to a unit dosage form require simultaneous administration. Again... That's okay. You have different interpretations. No. The claims have to be interpreted as a whole. If a word can have a broader meaning because claim terms must be interpreted consistently throughout. But that word is modified by other words within the claim. In the Henry Ford Clinic situation, if amounts had been administered in the ranges that are referred to in the spec and it had worked, that would infringe Claim 1. I'm not sure about your hypothetical, because the Henry Ford... Henry Ford was concomitant. It wasn't simultaneous. No, Your Honor. Henry Ford was not concomitant. It wasn't simultaneous. It wasn't simultaneous, but it also was not concomitant. There is no evidence that that patient took naproxen and then took sumatriptan in a coordinated or co-timely fashion. Make a hypothetical where they did happen. If the two drugs were in the personal system at the same time, but not simultaneously administered at the same time, and they were done in the right amounts, that would infringe Claim 1. If the therapeutic benefits overlap, that would infringe Claim 1. But again, that is... That prior art might not Claim 1. It might. But again, if you look at that prior art, that prior art does not teach concomitant administration, because there's no evidence in the Henry Ford patient records that that patient took those two drugs in a... close enough in time to achieve the required co-timely or coordinated or simultaneous administration. In addition... I want to get at it, because you have in the 499 patent Claim 2, one claim, your client will be able to read on not simultaneous administration, but assume it's the right amount, and so... And it's in the body, okay? So, you will be able to prevail over parties in Claim 1 if people are using it not simultaneously, but concomitantly. And then under Claim 5, you'll be limited to simultaneous administration. Well, there's an additional issue there, though, because there is an efficacy requirement. And if you look at the Henry Ford patient records... I'm not there yet. I'll have... Well, you're asking me if they infringe, and I'm sorry. They would have to meet the efficacy element in order to infringe. And if you look at the Henry Ford patient records, just like the Tarsy, both of those references teach that this combination, in fact, doesn't work. They say there's no clinical benefit from it. The Henry Ford patient... Well, the question, from your adversary's point of view, is whether those references were adequately analyzed and assessed last time around, because the district court judge was of the view that simultaneous administration was required. But there's nothing in the order that dictates that in failing to find simultaneous administration, the court was saying that that reference doesn't teach concomitant administration. Those references do not teach concomitant administration, but if you read the court's order, particularly at... There are other references that do. There are other references that do what I'm saying. Teach concomitant. I don't think there are, Your Honor. There's no reference... The point that I'm getting at is it just seemed odd to me that you had a claim construction that said that when you're talking about concomitant administration, it's not limited to simultaneous administration, and that's very clear in the claim construction. And he's construing the claim for the entire patent. He's not construing it for one limitation, one claim to another. I guess how I would analogize it is if you had a claim to something that was green, and that was defined in the specification as being between 480 and 490 nanometers, and you had a dependent claim that was to tally green or light green, the word green in the dependent claims still independently still means a wavelength of light between 470 and 490 nanometers, but because it's qualified by the term light or because it's qualified by the term tally, that necessarily narrows the meaning of that claim as a whole. Likewise here. Concomitant administration was correctly construed by the court. I appreciate that, but you have a really interesting patent here where the patentee has in the spec actually defined terms. They've especially defined concomitant, and then they say it means co-timely, and co-timely means something obviously different from simultaneous because it means first drugs that are present in your system have therapy in the mouth. But then your honor, when you add additional words to a sentence, when you add additional words to a claim, when a claim is nothing more than a sentence, those words necessarily modify what the broader meaning of the term black concomitant administration means, and because the choice was made by the patentee to expressly state that this is in unit dosage form, there's just no way other than simultaneously that that term can be construed. That doesn't mean in the context of all the claims. But you would have a unit form if you were in a hospital and a patient was lying in their bed and you had two bags, and you were feeding intravenously the two different substances. No, unit dosage form has an agreed-to construction, and that is essentially a pill. Your hypothetical is actually not correct. Unit dosage form was expressly construed, and it effectively means a unit dose, a single pill, a single tablet formulation. So that's not correct. Well, that was an agreed-to construction. And unit dosage form is, I think, defined in the patent itself. I can get you that site later. But unit dosage form has an agreed-to construction, and that construction effectively means it's a single pill, a single unit dose that's delivered to the patient. Again, there is just no way that you can give a unit dose other than simultaneously. It is in the 499 patent, A395, column 8, lines 55. So unit dosage form shall mean a single drug administration entity. By way of example, a single tablet capsule drogen or troche. I'm sorry, it's a very bad... A single drug administration entity. By way of example. But that's all. But you're hypothetically... You can have two IVs. That's not a single drug administration entity. Respectfully, that's not a single drug administration entity. And it is not? It's not. No, Your Honor, it's not. How do we know that? That's two different administration entities. Both of those are embodied at separate rates in separate places. That's... I'm sorry, that's just not a single drug administration entity. In Posen... Your Honor, I do get the last word. Oh, I wanted that a little bit. In Posen's brief, you repeatedly state that opposing counsel misinterpreted or mischaracterized the proceedings. And you use words like page 64, this is a blatant mischaracterization of a prior proceeding. Do you file a complaint about this? No. Aren't you under an obligation if you think your opposing counsel is lying to take it to the bar? I mean, I don't like this kind of language. And it's all through your brief. I raised it with your opposing counsel. Tell me, are you standing by these kinds of characterizations? I think there were mischaracterizations of the record that were made by defendants in their briefs. I mean, if you can give me specific examples, I can tell you. Sure. Page 64. PARs and PRLs by bidding and initiation arguments rely on the faulty premise that the district court found in Posen argued that 85% is equal, equivalent to 90%. This is a blatant mischaracterization of a prior proceeding. Leaving aside Adams and the interpretation and the argument about it, how is it a blatant mischaracterization? That is a blatant mischaracterization. Your Honor, we never argued, and from the beginning we have always argued, that what they have is a layer equivalent that has all of the naproxen or all of the simitriptan respectively. We never argued that 85% is equivalent to 90%. We have always said from the beginning and the district court adopted, if you look at the district court's order, the district court adopted that there's a layer equivalent and that substantially all, and in fact what we argued was that all of the naproxen with respect to PAR and all of the simitriptan with respect to DRL is in those respective layers, layer equivalents. We have never argued and would never argue that 85% was equivalent to 90%. That was not the argument we made. They specifically formulate their tablets. I understand. It's a technical workaround. Yes. They specifically formulate their tablets to separate and segregate these materials and their specific, the means of their formulation, by the way they formulate their tablet, they are specifically and admittedly doing it to separate and segregate the materials. They're going so far as to take a piece, a plastic polymer and spraying that onto the granules to make sure that the simitriptan and naproxen don't interact with one another. PAR admits it in their product development report. They say, we're putting this plastic and spraying it around these products to keep them separated and segregated from the material. So, it was a blatant mischaracterization. We never, we never argued that 85% was equivalent to 90% and the court did not ever adopt the fact that 85% was equivalent to 90%. The court based this finding under the doctrine of equivalence on the fact that the way that they formulate their tablet results in a layer equivalent and specific design choices that they've made to carve off these small pieces and then spray plastic on them. Page 19. PDA asserts that this court failed to apply its claims in section in finding that prior art failed to teach or suggest simultaneous administration. This is a blatant mischaracterization. Again, there's no indication in the court's order that when he is saying simultaneous administration, he is saying that the prior fails to teach concomitant administration. The court lays out his understanding of what the claim means in footnote 12. But he never equates, he never directly equates the fact that when I'm saying there's no simultaneous administration, there's no concomitant administration. And that also is not what Pose and argued. Pose and argued that when you read the claim as a whole, when you look at claims that require a pharmaceutical composition comprising two elements, and those elements are, it sort of clarifies that those elements are present in a unit dosage form. There's simply no way to give that to a patient to administer those two drugs to a patient in a way other than simultaneously. So for them to say that the district court is misapplying its construction of concomitant administration is a blatant mischaracterization of the record because the court never says that that's what it's doing. Mr. Hash, I think you're playing a very dangerous game. Can we do that? It's okay. All right. Thank you, Mr. Hash. Thank you very much. Okay. Let's see. Mr. Berman, you have a couple of minutes. Thank you, Your Honor. I wanted to address just a couple of points here. First, it's clear that Mr. Hash is trying to relitigate Markman here. The Markman order specifically acknowledges that the claims were directed to compositions and therapeutic packages. It's right there on A2534. So he's clearly had one bite at the apple, didn't like the result, and is now saying, oh, well, if you look at it again, now you look at it again, and now I get simultaneous. The court said the construction is in the Markman order. The construction is based on the patent specification. It took into account the terms context in the asserted claim. It's right there on A2531. As I said, it specifically acknowledged that the claims were directed to both compositions and therapeutic packages on 2534. The provisional construction was too simultaneous, concomitant, equal, simultaneous, posed in, lobbied to have the definition be broadened to include the other types of concomitant administration. They lobbied from the provisional construction of concomitant, equal, simultaneous, to the final order of concomitant, equal, co-timely, coordinated, and simultaneous. They broadened it up. They don't like the result. Now they want to have us look at it very narrowly. On the second point, how do you rationalize the fact that there are claims which talk about the unit, that there is a unitary application? Let's say that the broader claims are to be looked at from your viewpoint, but how do you take care of the specific claims? Mr. Hash is making a broad generalization that there's no way in the universe you could have a unit dose that isn't administered simultaneously. That's just incorrect. One of Pozen's own products, the MOVO, has immediate release omeprazole, followed by delayed release naproxen, where the naproxen is released hours after this tablet's ingested. That is concomitant administration. Under any ordinary... Can you say that's a product? No, that's a different product that they own. So I don't understand how Mr. Hash is saying that one could never have concomitant administration by taking a unit dose. I'd like to hear your best answer to the point, to the claim which used the word unit. The two products provided in one unit. It conceivably... What I'm saying is that those claims are broad enough to conceivably cover a product where a unit dose form contains actives that are concomitantly administered. Are you saying that the accused product is in that category and therefore there's no infringement? No, that is not what I'm saying. That is not what I'm saying. I'm not sure I understand. We're talking from an analysis of... I'm sorry, Your Honor. We're talking from an analysis of invalidity here. The prior art shows concomitant administration of the two actives. All that's left is okay, take the sequential administration and do them at the same time. But the client doesn't do that. Excuse me? None of the defendants here is arguing that this prevents them from providing sequential administration of different pills. No, none of the... On the 499 and 458 patent, there is not an argument of non-infringement being advanced on appeal. It is an argument sheerly of invalidity of those claims. So, what the defendant's products do is not relevant to that analysis. We are simply saying that the prior art has concomitant administration of the two actives. You have sumatriptan in 40% of the people in... I'm sorry, in 40% of the people that take sumatriptan, you have a relapse headache. Then they take naproxen. Instead of waiting a couple of hours, magic. Put them together in a single pill. Boom. Bob's your uncle. All right. Well, I guess you've exhausted your rebuttal time. Is there anything else you need to tell us? Quickly? No, thank you, Your Honor. Okay. Thank you, Mr. Vernon. Mr. Krzyzewski, you're up. Thank you, Your Honor. One minute. You'll have to speak fast. Yes, I will. I will speak very fast. There's something that Judge Wallach said I should address on rebuttal. And that is... I didn't say you should. I said I thought you would. Oh, then I will, Your Honor. That is the question of evidence with respect to DRL and the infringement of the 183 patent. First of all, none of the appendix citations that Mr. Hesh cites in any way is an ignition or in any way states that DRL's tablet has independent dissolution. Secondly, with respect to Posen's expert coming to the conclusion that there was independent dissolution, again, by looking at the end of dissolution pattern alone of Dr. Radice, as I addressed earlier, where is the comparison? Where is the comparison to what is set forth in the 183 patent? The requirement that a comparison be made between the multilayered tablet and single tablets of the individual components. Finally, with respect to the statement that DRL's expert said, well, I don't know if there's independent dissolution. Well, that's very clear. DRL's expert had no obligation, had no burden, to say there was independent dissolution or not. If any testing had to be done with respect to the DRL product or any other of defendant's product, that testing was the requirement of Posen. They had the obligation, they had the burden to prove infringement, they had the burden to show each and every element of the claim, and with respect to Claim 2, depending on Claim 1 and 183 patent, they failed in that respect. And I see my time is over. Okay. Okay. Thank you. Thank you. Thank you. Thank you.